A08A0536. QURESHI v. THE STATE.

(662 SE2d 806)

PHIPPS, Judge.

Yasir Qureshi and Carl Roberts were jointly charged with kidnapping and robbery by force. Qureshi was tried before a jury and convicted of both offenses. Following the denial of his motion for new trial, he appeals. He complains of the admission of testimony by the investigating police officer that, although he initially agreed to talk to the officer after receiving *Miranda* warnings, he subsequently refused to respond to additional questioning in the absence of an attorney. Because the officer's passing reference to Qureshi's invocation of his right to counsel clearly did not constitute reversible error under the facts of this case, we find no merit in Qureshi's complaint and affirm.

The state's evidence showed that at around noon on February 20, 2005, the victim, Willie Morant, was taking a shower in his Atlanta apartment. In response to a knock on the door by Qureshi, Morant came to the door clad only in his pants. When Qureshi identified himself as a police officer, Morant opened the door. Qureshi then forced his way into the apartment, opened the back door, and let Roberts in. Qureshi and Roberts proceeded to beat Morant, ransack his apartment, put various items of his personal property in a duffle bag, tie his hands behind his back, force him out of his apartment into a car, and drive away with him.

Morant's neighbor, James Fletcher, saw Qureshi and Roberts knocking on Morant's door. Because Morant's roommate's car was not there, Fletcher told them no one was home. According to Fletcher, no one answered the door, and Qureshi and Roberts then walked to the back of the apartment building. Because he did not know Qureshi or Roberts, and because there had been numerous

burglaries at the apartment building, Fletcher called the police but no one responded to the scene. After Fletcher saw Qureshi and Roberts forcing a battered Morant with his hands tied behind his back into their car, he called the police again.

City of Atlanta police officer Emma Miles responded to the second call. She encountered Qureshi's car and blocked its exit from the scene. After she did so, Morant exited the vehicle. He was bruised and bleeding and wearing only pants. Qureshi and Roberts were arrested by Miles and another officer. Miles testified that after Qureshi was given *Miranda* warnings, she asked him what had happened and he told her that he was helping Morant move; but when she began questioning him further, he said that he did not want to speak to her anymore without an attorney. She then stopped questioning him.

In his defense, Qureshi testified that he had met Morant a few weeks earlier and had gone to his apartment on the day in question to pick up some things for a friend of Morant's roommate. Qureshi claimed that after he and Roberts arrived at the apartment, Morant became belligerent and began to fight with Roberts. According to Qureshi, Morant put the items of property in the duffle bag for his roommate's friend, voluntarily left the apartment, and got in the car. Qureshi denied having tied Morant's hands.

> In *Doyle v. Ohio*, the Supreme Court held that the use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving *Miranda* warnings, violates the Due Process Clause of the Fourteenth Amendment. As the Court has recognized in numerous post-*Doyle* opinions, the *Doyle* rule rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. The source of this implicit assurance is the giving of *Miranda* warnings, through which a person taken into custody is expressly advised that he has the right to remain silent, and that he has a right to retained or appointed counsel before submitting to interrogation. Thus, although the improper references at issue in *Doyle* concerned only the defendants' post-*Miranda* silence, the prohibition extends equally to impeachment use of a defendant's post-*Miranda* invocation of the right to counsel.[1]

---

[1] *Hill v. Turpin*, 135 F3d 1411, 1413-1414 (11th Cir. 1998), citing *Doyle v. Ohio*, 426 U. S. 610, 619 (96 SC 2240, 49 LE2d 91) (1976) (citations and punctuation omitted).

In *Hill v. Turpin*,[2] the Eleventh Circuit Court of Appeals noted, however, that it had

> repeatedly held *Doyle* error harmless where the violation consisted of only a single reference to the defendant's post-*Miranda* silence during the course of a trial at which the government's evidence was otherwise overwhelming . . . often emphasiz[ing] both that the improper reference was "isolated" or "unintentional" or promptly addressed by a curative instruction from the trial court, and that the prosecutor made no effort to further "highlight" the defendant's exercise of *Miranda* rights either in questioning other witnesses or during closing argument.[3]

In *Jacks v. Duckworth*,[4] as here, the defendant continued to converse with the investigating law enforcement officer after having received *Miranda* warnings, but, after answering preliminary questions, said that he wanted to talk to his attorney about the event in question. The trial court admitted the entire conversation into evidence. The Seventh Circuit Court of Appeals found no reversible error. The court concluded that although it would have been better practice to redact the defendant's invocation of his right to counsel, the trial court had let it in "merely to mark the termination of . . . permissible evidence."[5] The court also noted that the prosecutor had not used the defendant's silence for impeachment purposes.[6]

Here too, the defendant's invocation of his right to counsel marked the termination of permissible evidence. No curative instruction was given to the jury because no objection was made. In cross-examining Qureshi after the investigating officer had testified, the prosecuting attorney did not attempt to impeach him with his failure to inform the investigating officer of the explanation he provided at trial. Nor did the prosecuting attorney comment on this in closing argument. Moreover, Morant's version of events was corroborated by his neighbor Fletcher. And it is highly doubtful that any rational juror would have believed Qureshi's claim that Morant voluntarily accompanied himself and Roberts in the car clad only in

---

[2] Supra.

[3] Id. at 1417 (citations omitted).

[4] 651 F2d 480 (7th Cir. 1981).

[5] Id. at 483.

[6] Id.; *Crowder v. State*, 237 Ga. App. 312, 315 (2) (513 SE2d 752) (1999) (*Doyle* error harmless where law enforcement officer's testimony that defendant had invoked his right to counsel upon being questioned during case investigation was not deliberately elicited by the prosecutor as a blatant attack on defendant's credibility).

YALE LAW LIBRARY

his pants on a February day after having been bloodied and bruised. Under these circumstances, there is no reasonable likelihood that the officer's fleeting reference to Qureshi's invocation of his right to counsel contributed to the verdict.

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED MAY 29, 2008.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.